# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **ELISA MADONIA,**  Plaintiff,  v.  **S 37 MANAGEMENT, INC.; CMN, INC.; and DEEANNE DIMUCCI,**  Defendants. | **Case No. 14 C 628**  Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

The Plaintiff, a customer service representative, suffered from Stage III esophageal cancer while working for S 37 Management, Inc. ("S 37"). During 2012 and 2013, she had taken intermittent medical leave. On October 16, 2013, her treating oncologist advised Defendant S 37 of her condition and said "that she would be able to work intermittently, and would ultimately require surgery in February 2014." On the October date, Plaintiff requested as a reasonable accommodation to her condition that she be allowed to work a four-day week while she underwent chemotherapy and radiation treatment. Defendants refused to accommodate her request and terminated her on October 22, 2013.

At the time of her termination, Defendant Deeanne DiMucci ("DiMucci") falsely represented to her that the health insurance carrier may not cover treatment for her illness if it found out

that she could not work full time and, if the insurance company discovered that she had taken approved days off for diagnostic testing, it would cancel her coverage. On October 25, 2013, Defendants presented Plaintiff with a proposed Separation Agreement and Release (the "Agreement") providing her with compensation and benefits in the form of CMN paying her insurance premiums in exchange for a release for all of her employment related claims. One day prior Plaintiff had an emergency blood transfusion. While Plaintiff does not allege that she accepted or rejected the Agreement, by implication she did not accept it because the proposed Agreement provided for Defendant CMN, Inc. ("CMN") to make all COBRA premium payments for Plaintiff through May 31, 2014. Plaintiff alleges in her Complaint that she was told that she "could only continue insurance coverage if a check for the premium was immediately tendered." Further adding to the implication that the Agreement was not executed is the failure on the Defendants' part to plead the Release as an affirmative defense. Plaintiff denies receiving any notice of her health care continuation rights as required under COBRA.

**II. DISCUSSION**

Based on these allegations, Plaintiff filed a six-count Complaint, four counts under the ADA, one count under COBRA, and a state law claim for intentional infliction of emotional distress. Defendants have moved to dismiss all six counts.

Plaintiff has set forth her claims under the Americans with Disabilities Act ("ADA"), 4 U.S.C. § 1161, *et seq.* Count I is based on her termination. Count II is based on failure to accommodate. Count III is based on a record of here alleged disability. Count IV is based on the allegation that Defendants regarded Plaintiff as having disabilities. The remaining Counts are based on alleged violation of COBRA (Count V) and intentional infliction of emotional distress (Count VI).

### A. The Disability Counts

Defendants' main argument against the disability counts is their contention that Plaintiff has failed to allege that she was a qualified individual under the ADA, that is, that she could perform the essential functions of her job either with or without an accommodation. Defendants cite a number of cases that apply the *Thombly/Iqbal* plausability standard in the disability context, *e.g., E.E.O.C. v. SuperValu, Inc.,* 674 F.Supp.2d 1007 (N.D. Ill. 2009). The gist of these cases is that a plaintiff may not rely upon a conclusory, formulaic assertion of being a qualified individual. *E.E.O.C. v. SuperValu, Inc.,* 674 F.Supp.2d at 1011. However, the Plaintiff attached her Illinois Department of Human Rights ("IDHR") Complaint as an exhibit to her Complaint which includes some of the necessary allegations of fact. In that document, she alleges that she has a disability (Stage III esophageal cancer) "which substantially limited [her] in one or

*[sic]* major life activities, including . . . working, taking care of myself, performing manual tasks, breathing, eating, and mental/emotional processes." She further alleges that her doctor told her that she would be able to work "intermittently" and she requested as a reasonable accommodation that she work four days per week while she underwent chemotherapy and radiation treatment.

While part-time or modified work schedules can be an accommodation (*Gile v. United Airlines, Inc.,* 95 F.3d 492, 497 (7th Cir. 1996), it can only suffice if it is reasonable under the circumstances and enables the employee to perform the essential functions of the job. The Court has reviewed the Complaint and there is no specific allegation that she would have been able to "perform the essential functions of her job" with such an accommodation. Whether this is an oversight is unknown. Plaintiff describes in great detail the limits of her major life activities as a result of her disability, so she has adequately pled that she is disabled, but she fails to allege that she could do the job with the four-day week accommodation. Since this is a necessary allegation to support an ADA claim, she needs to allege specifically that she can perform the essential functions of the job with the accommodation. Since all four of the disability counts are based on the ADA, all four must be dismissed without prejudice, with the right to replead if she can.

The Defendants also contend that Plaintiff did not exhaust her administrative remedies against Defendant CMN. The basis for this contention is that Plaintiff, in her IDHR Complaint, listed only S 37 as her employer. However, as alleged by Plaintiff in her Complaint, when her "employer" sought to enter into the Separation Agreement with her, the employer was listed as CMN and Plaintiff was listed as the employee. Plaintiff also points out that CMN was listed as a respondent on her EEOC charge and the EEOC mailed a copy of the Notice of Right to Sue to CMN. Failure to name a proper party to an EEOC charge is not necessarily fatal to a suit against the unnamed party. The Seventh Circuit has held that where the interests of the named and unnamed parties are similar; where the absence of the unnamed party did not result in prejudice; and where the unnamed party had notice of the proceeding, failure to name the proper employer can be excused. *Eggleston v. Chicago Journeymen Plumbers' Local No. 130,* 657 F.2d 890, 905 (7th Cir. 1981). It appears from the filings that Plaintiff has met the tests enumerated in *Eggleston* so the Motion to Dismiss CMN on that basis is denied.

### B. Count V - COBRA

Plaintiff contends that Defendants violated COBRA because they fired her and failed to give her the notice required by COBRA. Defendants respond pointing out that Plaintiff never lost her insurance coverage. At the time she was fired, they offered and

she accepted the right to continue her medical coverage. Plaintiff argues that she did so because she was told that she would lose her benefits if she didn't maintain her coverage by paying the premium. The Defendants have the better of the argument. One of the qualifying events that triggers the need to give a COBRA notice, termination of employment leading to loss of insurance coverage. If there is no loss of coverage, then there is no triggering event. *Mansfield v. Chicago Park District Group Plan,* 997 F.Supp. 1053, 1057 (N.E. Ill. 1998). The purpose of the notice and the COBRA right to continue coverage is to allow a discharged employee to continue coverage under a group policy for a period of time which is generally cheaper than an individual policy and provides continuous coverage where some preexisting condition (such as Plaintiff's esophageal cancer) would make obtaining new coverage difficult, expensive, and probably impossible. A second reason why this claim doesn't fly is because the statute does not specify the form the notice must take. Here, the Defendants verbally notified Plaintiff of her right to continue coverage at the time she was discharged which kept her as an insured under the company's policy by accepting her premium payments. Therefore, the notice was adequate. Moreover, since Plaintiff continued as a covered person, the policy covered her for her medical expenses so she does not have any damages such as uncovered medical bills which she would

have incurred if she had not been allowed to obtain continuous coverage. The Motion to Dismiss Count V is granted.

**C. Count VI - Intentional Infliction of Emotional Distress**

The Plaintiff's claim for Intentional Infliction of Emotional Distress ("IIED") is based on six alleged actions on the part of the Defendants. As set forth in her Complaint, they are:

> A. Failing to accommodate her disability;
>
> B. Terminating her employment within six (6) days of her notifying them of her cancer;
>
> C. Falsely telling her that her insurance coverage would by compromised if the carrier learned of her disability;
>
> D. Falsely telling her that her insurance coverage would be maintained only if she tendered payment of health insurance premium;
>
> E. Not affording her a COBRA notification; and
>
> F. Making false representations to get her to execute a release and waiver of her federal employment claims.

The Defendants contend that this claim is preempted by the Illinois Human Rights Act ("IHRA") and ERISA. Plaintiff contends that it is not preempted because it is actionable as a tort aside from its character as a civil rights violation and because the claim does not relate to an employee benefit plan so it is not preempted by ERISA. However, the IHRA prohibits employment discrimination based on disability and any claim that it is

inextricably linked to her disability claim is preempted. *Krocka v. City of Chicago,* 203 F.3d 507, 517 (7th Cir. 2000).

The first two alleged actions forming the basis for her IIED claims are failing to accommodate her and terminating her. Those two allegations cannot form the basis for an IIED claim for they make up her ADA claim, so that they are preempted by the IHRA.

The law is similar with respect to ERISA preemption. ERISA preempts claims where the state law intrudes on what are considered fundamental concerns of ERISA such as calculation of insurance benefits and wrongful denials of coverage. Where these concerns are not implicated there is no preemption. *Trustees of AFTRA Health Fund v. Biondi,* 303 F.3d 765, 778 (7th Cir., 2002). With this principle in mind it is obvious that Allegation E, failure no give a COBRA notification is preempted. Also preempted is Allegation D which as far as the Court can see is not false. COBRA requires notification that a terminated employee can keep up coverage if the employee makes the insurance payments. That is what COBRA, a part of ERISA, is all about. Since Allegation C involves the interpretation of an ERISA policy, this would be preempted also.

This leaves Allegation F which involves trying to get Plaintiff to release her employment discrimination claims. Since this involves allegations of state law fraud, it would appear that this is not preempted. However, since all but one of the alleged

outrageous claims are, in fact, preempted, the question is whether this single allegation is sufficiently serious to amount to IIED. Under Illinois law, to qualify as sufficiently outrageous to amount to IIED, "the nature of defendant's conduct must be so extreme as to go beyond all possible bounds of decency and regarded as intolerable in a civilized community." *Feltmeier v. Feltmeier,* 207 Ill.2d 263, 274 (2003). Here the allegation is that Defendants attempted to get Plaintiff to sign a release in return for CMN paying her insurance premiums, which, since if they had cause to discharge her, it did not have to do. So the Agreement did have valuable consideration. The Court does not believe that this conduct is sufficient to amount to IIED. Therefore, Count VI is dismissed.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is granted. Counts I, II, III, and IV are dismissed without prejudice. Counts V and VI are dismissed with prejudice. Plaintiff has twenty-one (21) days from the date of this Order to file an Amended Complaint with respect to Counts I through IV.
**IT IS SO ORDERED.**

                                       Harry D. Leinenweber, Judge
                                       United States District Court

Date: 8/14/2014